☑ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | |
| *or identify the person by name and address)* ) | Case No. 24-919M(NJ) |
| Apple iPhone, blue (unknown model, unknown serial ) | |
| number, contained on Milwaukee Police Department ) | |
| Inventory No. 24023778, Item 1) ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 10/3/2024_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.      xx☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Honorable Nancy Joseph, U.S. Magistrate Judge___ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: 9/19/2024 @ 3:43 p.m._____        _Nancy Joseph_
                                                                                                                *Judge's Signature*

City and state:      _____Milwaukee, WI_____        Honorable Nancy Joseph, U.S. Magistrate Judge
                                                                                                *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1.     The property to be searched is one electronic storage device associated with Milwaukee Police Department Inventory No. 24023778 which can be further described as;

Apple iPhone, blue (unknown model, unknown serial number, contained on Milwaukee Police Department Inventory No. 24023778, Item 1, **TARGET CELL PHONE**)

## ATTACHMENT B

### Particular Things to be Seized

1.  All records on cellular phone related to violations of 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime)18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 922 (o)(1) (possession of a machine gun unlawfully) is housed within the aforementioned cellular devices including:

    a.  lists of contacts with any identifying information;

    b.  photographs, videos, or other media storage connected to firearms;

    c.  any information related to sources or purchasers of firearms (including names, addresses, phone numbers, or any other identifying information);

    d.  all bank records, checks, credit card bills, account information, and other financial records related to drug and firearms commerce.

2.  Any and all financial records connected to the purchase/sale of firearms;

3.  Documentation establishing the identity of the individuals in control of the residences;

4.  Any and all financial records connected to the purchase/sale of firearms, and any correspondence regarding other firearms and/or purchasers;

5.  Any evidence of proceeds of firearm activities, including United States currency;

6.  All bank records, checks, credit card bills, account information, and other financial records; financial records, documents, statements, or other evidence of control of bank or other financial accounts and investment funds;

7.  Personal address books, telephone bills, photographs, letters, personal notes, documents and other items or lists reflecting names, addresses, telephone numbers, addresses

2

and communications regarding illegal activities among and between members and associates involved in firearm crimes and activities.

8. Records of off-site locations to store proceeds and other records, including safes, vaults, or lock boxes, safe deposit box keys, records and receipts and rental agreements for storage facilities;

9. Records of mail and communications services, cellular telephones and all electronic storage areas on the device including stored telephone numbers, recently called numbers list, text messages, digital audio and or video recordings, pictures, settings, and any other user defined settings and/or data.

10. Evidence of indicia of occupancy, residency or ownership of premises, including utility bills, telephone bills, loan payment receipts, addressed envelopes, escrow documents and keys.

11. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

12. Records evidencing the use of the Internet Protocol address, including:

    a. records of Internet Protocol addresses used;

    b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored,

3

including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Apple iPhone, blue (unknown model, unknown serial<br>number, contained on Milwaukee Police Department<br>Inventory No. 24023778, Item 1) | )<br>)<br>)<br>)<br>)<br>)<br>)     Case No. 24-919M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

❒ evidence of a crime;

❒ contraband, fruits of crime, or other items illegally possessed;

❒ property designed for use, intended for use, or used in committing a crime;

❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. § 2119 | Carjacking |
| Title 18 U.S.C. § 924(c) | Use of a firearm during the commission of a violent crime |
| Title 18 U.S.C. § 922(g)(1) | Possession of a firearm by a felon |

The application is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

❒ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

FRANK RUTTER    Digitally signed by FRANK RUTTER<br>Date: 2024.09.19 10:09:48 -05'00'

*Applicant's signature*

Special Agent Frank Rutter, ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ telephone _____ *(specify reliable electronic means).*

Date: 9/19/2024

*Judge's signature*

City and state:   Milwaukee, Wisconsin     Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Frank Rutter, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, one cellular phone described in Attachment A, and the extraction of evidence described in Attachment B.

2.      I am employed with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since 2015. As an ATF Agent, I have participated in the investigation of firearms-related offenses, including violent crimes such as armed carjackings and robberies, and narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, and weapons. As a firearms investigator, I have interviewed many individuals involved in firearm-related offenses and drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of firearms and controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by violators of firearms law and traffickers and abusers of controlled substances.

3.      I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia, as well as the ATF National Academy. That training included various legal courses related to constitutional law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as interviewing, surveillance, and evidence collection.

16

4.      Based on my training, experience, and participation in the investigation of firearms-related offenses and drug trafficking, I know and have observed the following:

5.      I have relied on informants to investigate firearms-related offenses and drug trafficking. Through informant interviews and debriefings of individuals involved in those offenses, I have learned about the manner in which individuals and organizations finance, purchase, transport, and distribute firearms and narcotics both within and outside of Wisconsin. I have utilized informants to conduct "controlled purchases" of firearms and controlled substances from individuals, as opposed to licensed gun dealers. I have also conducted surveillance of individuals engaged in firearms and drug trafficking and participated in the execution of numerous search warrants resulting in the seizure of drugs, firearms, ammunition, and magazines.

6.      Based on my training and experience, I have become familiar with the language utilized over the telephone to discuss firearms and drug trafficking and know that the language is often limited, guarded, and coded. I also know that individuals in volved in firearms-related offenses and drug traffickers often use electronic devices (such as computers and cellular phones) and social media to facilitate these crimes.  Based on my experience, I know that individuals involved in firearms-related offenses may keep photographs of firearms on electronic devices.

7.      I also know that drug traffickers and individuals involved in firearms-related offenses commonly possess—on their person, at their residences, at their places of business, in their vehicles, and other locations where they exercise dominion and control—firearms, ammunition, and records or receipts pertaining to such.

8.      I know that firearms-related offenders and drug traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate these and related offenses. I also know that firearms-related offenders and drug traffickers often use proceeds to purchase assets such as vehicles, property, jewelry, and narcotics. I also know that firearms-related offenders and drug traffickers often use nominees to purchase or title these assets to avoid scrutiny from law enforcement.

9.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

10.     There is probable cause to believe that evidence of violations of the following laws of the United States, including the things described in Attachment B, will be found in the property listed in Attachments A, respectively evidence of Title 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c)(use of a firearm during the commission of a violent crime), Title 18 U.S.C. § 922(g)(1) (prohibited person in possession of a firearm) and Title 18 U.S.C. § 1951 (Hobbs Act Robbery) is housed within the aforementioned cellular device.

11.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3

## IDENTIFICATION OF PROPERTY TO BE SEARCHED

12.     The property to be searched is one electronic storage device associated with Milwaukee Police Department Inventory No. 24023778, which can be further described as the following:

- Apple iPhone, blue (unknown model, unknown serial number, contained on Milwaukee Police Department Inventory No. 24023778, Item 1, **TARGET CELL PHONE**)

The applied-for warrant would authorize the search and recovery of evidence particularly described in Attachment B.

## PROBABLE CAUSE

### August 17, 2024 - Carjacking (Location 1)

13.     Affiant has reviewed Milwaukee Police Department (MPD) reports associated with MPD IR C2408170037 which were related to a carjacking investigation. Those reports document how on August 17, 2024, MPD responded to an armed carjacking which occurred at 2609 N. Fratney Street, Milwaukee, Wisconsin (Location 1). Those reports reflect that when officers arrived, they spoke with victim, identified as M.P. who stated he/she was working as an Uber driver when he/she had been carjacked by two unknown black males.

14.     Those reports reflect that M.P. was interviewed by Detective Carloni, who reported M.P. made the following statements: M.P. explained they had been an Uber driver for approximately six years and identified their vehicle as a 2020 Black, Dodge Durango SUV with Wisconsin license plate 700XRF. M.P. related they had accepted an Uber ride request at approximately 5:15 AM (CST) on August 17, 2024, with a pickup location of 2630 N. Fratney

4

Street in Milwaukee, Wisconsin. M.P. explained while traveling to pick up the Uber customer they were stopped at a redlight traveling East at the intersection of E. Center Street and N. Holton Street in Milwaukee, Wisconsin. At this intersection, M.P. explained they observed a black four door sedan with heavy window tints stopped at the same traffic light facing South. When M.P. received the green light to proceed East through the intersection, M.P. observed the aforementioned black sedan disregard the red traffic light, make a left turn to follow M.P. East on E. Center Street. M.P. stated they turned South on N. Fratney Street and pulled over in front of 2609 N. Fratney Street to pick up the Uber customer. At this time, M.P. explained the black sedan slowly drove by before turning West onto E. Clarke Street. M.P. recalled a "short time" later someone (Suspect 1) approached his/her vehicle after coming from the Northwest corner of N. Fratney Street and E. Clarke. M.P. stated Suspect 1 approached his/her vehicle with a silver handgun pointed at him/her. M.P. explained Suspect 1 knocked on the vehicle window with the handgun and demanded the victim exit the vehicle and give up the vehicle keys. M.P. explained he/she complied with the request and began walking North on N. Fratney Street away from his/her vehicle. M.P. recalled hearing Suspect 1 yell for Suspect 2 to get in the vehicle. M.P. stated they observed Suspect 2 come from the West alleyway on N. Fratney Street and enter the passenger seat of M.P.'s vehicle. Suspect 1 entered the driver's seat and the vehicle fled South on N. Fratney Street before turning and going West on E. Clarke Street.

15. Detective Carloni further reported that M.P. described Suspect 1 as a black male, approximately 20 years old, 5'7" to 5'8", thin build with a short afro and a dark complexion. M.P. stated Suspect 1 was wearing a black sweatshirt with the hood cinched around their face and was armed with a silver handgun.

5

16.     Detective Carloni reported that M.P. described Suspect 2 as a black male but could not provide any further detail.

17.     Detective Bongel was assigned video-surveillance follow up and reported he recovered video surveillance footage from nearby store, Riverwest Co-Op located at 733 E. Clarke Street. SA Rutter obtained a copy of these recordings and reviewed them which depicted the following: the victim's vehicle can be observed traveling South on N. Fratney Street before pulling alongside the West curb and facing South.  Review of the surveillance cameras revealed the suspect's vehicle, a dark four door sedan passed the victim's vehicle traveling South on N. Fratney Street where it then turned West onto E. Clarke Street.  The suspect vehicle could be seen stopping in front of 726 E. Clarke Street where two suspects (both passengers) exited the vehicle and began walking towards and then North on N. Fratney Street towards the victim's vehicle.  The suspect vehicle can be further described as a black, four door sedan with window tints.  The vehicle appeared to have dark wheels and a license plate affixed to the front and rear bumpers.  Below is a picture of the suspect vehicle taken from the surveillance footage.



18.     That video further shows both suspects to be wearing dark clothing.  The two suspects can be seen on video approaching the victim's vehicle before committing the

6

carjacking. Suspect 1 approached the driver's side of the vehicle and could be seen raising their arm towards the vehicle as they neared. It should be noted the victim previously related to Detective Carloni that Suspect 1 pointed a firearm at them while approaching. Suspect 2 approached the passenger side of the vehicle. After depriving the victim of their property, Suspect 2 could be seen fleeing on foot back to the suspect vehicle and Suspect 1 drove the victim's vehicle south on N. Fratney Street and then west on E. Clark Street where it passed the suspect vehicle. Both vehicles traveled West on E. Clarke Street to flee the area.

### August 17, 2024 – Fleeing/Eluding (Location 2 and 3)

19.     Affiant further reviewed MPD reports associated with MPD IR C2408170036 which were related to a fleeing/eluding offense from that same date involving the victim's vehicle after the carjacking. Those reports reflect that MPD Squad 5340 was dispatched to assist with the aforementioned carjacking incident. Officer Roembke reported that while traveling to the site of the carjacking with his partner Officer Gregory, they observed the black Dodge Durango headed West on W Center Street at the intersection of N. 27th Street in Milwaukee. The driver of the Dodge Durango immediately started accelerating at a high rate of speed headed west from N. 27th Street (Location 2). MPD officers activated their emergency lights and siren to affect a traffic stop, but the driver refused to stop while accelerating to even higher speeds. The vehicle pursuit continued for 1.9 miles as the driver disregarded red traffic lights and stop signs. MPD lost sight of the Dodge Durango on N. Appleton Avenue and W. Center Street in Milwaukee, Wisconsin (Location 3). The vehicle's speed reportedly reached over 90 miles an hour and included driving on the wrong side of the road.

**August 17, 2024 – FLOCK hit (Location 4)**

20.     On August 17, 2024, at approximately 10:41 AM (CST), the victim's vehicle was recorded by an automated license plate reader traveling North on N. 91st Street through W. Silver Spring Drive in Milwaukee, Wisconsin (Location 4). SA Rutter learned this information through a license plate query in the FLOCK system.



**August 18, 2024 – Vehicle Recovery**

21.     On August 18, 2024, MPD responded to the area of 5722 N. 84th Street in Milwaukee, Wisconsin after receiving information that the Dodge Durango was pinging there. This information was documented in a report written by Officer Leidy under MPD IR C2408170037. The report stated upon arrival, Officer Leidy and Officer Rummel located the victim's vehicle parked directly across from 5722 N. 84th Street. The vehicle was observed to have a red dealership placard on the rear bumper and the white stripes on the hood had been removed. Officers conducted surveillance of the vehicle and observed an unknown black male subject wearing a black zip-up hooded sweatshirt and black jogging pants with a blue stripe down the exterior of both legs exit the south door of 8500 W. Fond Du Lac Avenue. Officers

8

observed the unknown black male approach the vehicle where the subject appeared to take a photo of the vehicle. The subject then re-entered into the building. Officers continued to monitor the vehicle but ultimately decided to approach and recover the vehicle. The vehicle was recovered and towed as evidence without incident.

**Vehicle Processing**

22.    On August 19, 2024, Detective Barker responded to MPD's tow lot to process the recovered vehicle with Forensic Investigator Roeglin. Detective Barker's report detailed several items of evidentiary value were recovered from the vehicle including, but not limited to, an iPhone (**TARGET CELL PHONE**) with an unknown model, unknown serial number, contained on Milwaukee Police Department Inventory No. 24023778, Item 1. Photographs of the recovered device showed it to be blue and without a protective case. It should be noted the victim previously described their personal device as a black iPhone housed within a red and black Air Jordan branded protective case. Investigator Roeglin also obtained 7 DNA swabs and 12 latent print lifts. Those prints were compared to a database of known fingerprints and that analysis identified two such latent prints (from the driver's door window and the rear driver's side door) as that of Michael A. Johnson (DOB: XX/XX/2005).

**Michael A. Johnson**

23.    Affiant has reviewed of Wisconsin Circuit Court records revealed Michael A. Johnson received an adult felony conviction under Milwaukee County Case 2021CF000045 for violating Wisconsin statute 940.20(1) – Battery by Prisoners. This conviction prohibits Michael A. Johnson from legally possessing firearms.

24.    Additionally, Michael A. Johnson has numerous juvenile felony convictions:

- 2022JV000327 – Armed Robbery, 943.32(2)

9

- 2020JV000529 – Robbery with Use of Force (943.32(1)(a)), Drive or Operate Vehicle w/o Consent (943.23(3))

- 2019JV000362 – Drive or Operate Vehicle w/o Consent (943.23(3))

- 2018JV000716A – Operate Vehicle w/o Consent-Passenger (943.23(4m))

- 2018JV000716 – Robbery with Use of Force (943.32(1)(a)), Operate Vehicle w/o Consent-Passenger (943.23(4m))

25. Your affiant is aware on August 26, 2024, Detective Carloni showed a photo array to the victim which included a photograph of Michael A. Johnson. This event is memorialized in report associated with MPD IR C2408170037. Additionally, it should be noted the victim did not identify anyone in the photo array. Your affiant is aware one of the suspect's was previously described as having their hood up and cinched around their face during the carjacking. This manner of facial obstruction could have limited the victim's ability to get a strong look at the suspect's face during the crime.

## CONCLUSION

26. I believe there is probable cause that additional communications and location data relevant to the investigation and identification of possible co-conspirators is contained on the TARGET CELL PHONE. Further, I believe there is probable cause the TARGET CELL PHONE contains evidence of violations of Title 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime), and Title 18 U.S.C. § 922(g)(1) (prohibited person in possession of a firearm).

27. Your Affiant is aware that cellphones, tablets, computers and usb hard drives can be used to store information including photographs, text messages, multimedia messages, and a

10

history of incoming and outgoing calls, contact/address book information, photographs, video and other data.

28.     Similarly, your affiant is aware that many cellphones, tablets, computers and usb drives contain a list of contacts and associate names, and cellphone numbers and other identifying information.  Your Affiant asks that this information be included in the search warrant, as it will assist in identifying the user/owner of the cellphone, individuals with whom the user had contact, and may provide evidence of the source of any guns involved in this investigation.

29.     Your Affiant is also requesting an authorized search of cellphone devices and computers to include all removable drives, cards, memory devices or similar devices attached to or contained within said cellphone or computer. Your Affiant is aware that cellphones, tablets, and computers frequently contain SD cards or other removable memory/storage devices upon which data, including photographs, videos, and other information, may be stored.

30.     Your Affiant is aware that many cellphones, tablets and computers capture or otherwise store GPS location tracking/logging files, may provide additional evidence as to the targets travels and may provide evidence as to the location where the alleged illegal actions occurred. Similarly, said information may assist law enforcement with locating and identifying other subjects with whom the target was involved in related to narcotics trafficking, including by identifying the place or places where said illegal possession of firearms and/or narcotics may have occurred.

## TECHNICAL TERMS

31.     Based on my training and experience, I use the following technical terms to convey the following meanings:

32.     Wireless cellphone:  A wireless cellphone (or mobile cellphone, or cellphone) is a handheld wireless device used for voice and data communication through radio signals.  These cellphones send signals through networks of transmitter/receivers, enabling communication with other wireless cellphone or traditional "land line" cellphone.  A wireless cellphone usually contains a "call log," which records the cellphone number, date, and time of calls made to and from the cellphone.  In addition to enabling voice communications, wireless cellphones offer a broad range of capabilities.  These capabilities include: storing names and cellphone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless cellphone may also include global positioning system ("GPS") technology for determining the location of the device.

33.     Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

34.     IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to

12

the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

35. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

36. Based on my training, experience, and research, I know that these cellphone devices have capabilities that allow them to serve as a wireless cellphone, digital camera, GPS navigation device, portable storage, and a tablet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

37. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

38. There is probable cause to believe that things that were once stored on the device may still be stored there, for at least the following reasons:

> a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after

13

they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

14

39.     Forensic evidence.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the device because:

    e.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).  Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

    f.   Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    g.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able

15

to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

h. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

i. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

40.    Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

41.    Manner of execution. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the

16

Court to authorize execution of the warrant at any time in the day or night.

## ATTACHMENT A

### Property to Be Searched

1.      The property to be searched is one electronic storage device associated with Milwaukee Police Department Inventory No. 24023778 which can be further described as;

Apple iPhone, blue (unknown model, unknown serial number, contained on Milwaukee Police Department Inventory No. 24023778, Item 1, **TARGET CELL PHONE**)

16

# ATTACHMENT B

## Particular Things to be Seized

1.     All records on cellular phone related to violations of 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime)18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 922 (o)(1) (possession of a machine gun unlawfully) is housed within the aforementioned cellular devices including:

    a.  lists of contacts with any identifying information;

    b.  photographs, videos, or other media storage connected to firearms;

    c.  any information related to sources or purchasers of firearms (including names, addresses, phone numbers, or any other identifying information);

    d.  all bank records, checks, credit card bills, account information, and other financial records related to drug and firearms commerce.

2.     Any and all financial records connected to the purchase/sale of firearms;

3.     Documentation establishing the identity of the individuals in control of the residences;

4.     Any and all financial records connected to the purchase/sale of firearms, and any correspondence regarding other firearms and/or purchasers;

5.     Any evidence of proceeds of firearm activities, including United States currency;

6.     All bank records, checks, credit card bills, account information, and other financial records; financial records, documents, statements, or other evidence of control of bank or other financial accounts and investment funds;

7.     Personal address books, telephone bills, photographs, letters, personal notes, documents and other items or lists reflecting names, addresses, telephone numbers, addresses

2

and communications regarding illegal activities among and between members and associates involved in firearm crimes and activities.

8.     Records of off-site locations to store proceeds and other records, including safes, vaults, or lock boxes, safe deposit box keys, records and receipts and rental agreements for storage facilities;

9.     Records of mail and communications services, cellular telephones and all electronic storage areas on the device including stored telephone numbers, recently called numbers list, text messages, digital audio and or video recordings, pictures, settings, and any other user defined settings and/or data.

10.     Evidence of indicia of occupancy, residency or ownership of premises, including utility bills, telephone bills, loan payment receipts, addressed envelopes, escrow documents and keys.

11.     Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

12.     Records evidencing the use of the Internet Protocol address, including:

     a.   records of Internet Protocol addresses used;

     b.   records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored,

3

including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4